UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE DENECE BROWNLEE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:21-cv-00399-CDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION FOR FURTHER PROCEEDINGS UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>(Docs. 18, 20, 22) |

Nicole Denece Brownlee ("Plaintiff") seeks judicial review of the final order from the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security benefits and disability insurance benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the certified administrative record (Doc. 12) and the parties' briefs, which were submitted without oral argument. (Docs. 18, 20, 22).[1]

**I.      Background**

On January 23, 2015, Plaintiff protectively filed an application for Title XVI Supplemental Security Income ("SSI") and Title II Disability Insurance Benefits ("SSDI")

---

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 10).

1   alleging her onset of disability on August 8, 2013.  (Administrative Record ("AR") 228).

2   Plaintiff's application was denied initially on May 7, 2015 (AR 250-254), and on reconsideration

3   on August 3, 2015.  (AR 257-261).  Plaintiff then filed a request for hearing before an

4   Administrative Law Judge ("ALJ") on August 25, 2015.  (AR 264-266).  The hearing was held on

5   February 15, 2018, where Plaintiff appeared and testified.  (AR 122-154).  The ALJ denied

6   Plaintiff's claim on March 27, 2018.  (AR 225-240).  However, the Appeals Council remanded

7   the ALJ's decision by an order issued on November 14, 2018.  (AR 247-249).  Plaintiff appeared

8   at another hearing before an ALJ on March 30, 2019.  (AR 89-121).  Thereafter, The ALJ again

9   denied Plaintiff's claim on July 25, 2019.  (AR 22-41).

10         In remanding the original ALJ's decision, the Appeals Council directed the ALJ in

11   relevant part to:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and nonexamining source opinions in accordance with the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence.  (AR 25, 249).

17         The ALJ engaged in the five-step sequential evaluation process for determining whether

18   an individual is disabled under 20 C.F.R. § 404.1520(a).  At step one, the ALJ found that Plaintiff

19   met the insured status requirements of the Social Security Act through December 31, 2018.  (AR

20   28).  The ALJ further found that Plaintiff did not engage in substantial gainful activity since her

21   alleged disability onset date of August 8, 2013.  *Id*.

22         At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and

23   thoracic spines and degenerative joint disease of the left shoulder with arthropathy and

24   supraspinatus impingement status post-surgery were severe impairments.  (AR 28-29).

25         At step three, the ALJ found that Plaintiff did not have an impairment or combination of

26   impairments that meet or medically equal the severity of one of the listed impairments in 20

27   C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ found that Plaintiff's degenerative disc disease of the

28   cervical and thoracic spines did not meet listing 1.04 (Disorders of the spine) because there is no

significant evidence that Plaintiff has any neurological deficits, any inability to ambulate effectively, or inability to perform fine and gross movements effectively. (AR 30). The ALJ also found Plaintiff's degenerative joint disease of the left shoulder with arthropathy and supraspinatus impingement did not meet or medically equal listing 1.02 (Major dysfunction of a joint due to any cause) because there is no evidence that Plaintiff has any gross anatomical deformity of the left shoulder which results in the inability to perform fine and gross movements effectively.

The ALJ found Plaintiff's residual functional capacity ("RFC") to be as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except climbing ramps and stairs is frequent; balancing, stopping, kneeling, and crouching are frequent; climbing ladders, ropes, and scaffolds is occasional; and crawling is occasional. Reaching, handling, fingering, and feeling is limited to frequent bilaterally. (AR 30).

At step four, the ALJ found that Plaintiff's medically determinable impairments could be reasonably be expected to cause her alleged symptoms, but found that her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the overall record. (AR 31). The ALJ acknowledged that the record included "medical opinions provided by treatment providers and gives them little weight." (AR 37). The ALJ thereafter addressed medical opinions provided by Dr. Bradford A. Anderson, MD; Jan M. Guy, PA; Gurpreet Grewal, NP; and Dr. Sarrafian Peyman, MD. (AR 38).[2]

Relevant here, the ALJ noted that Dr. Anderson submitted multiple medical opinions opining that Plaintiff was totally temporarily disabled from August 4, 2017, until October 13, 2017; and from February 16, 2018, until August 3, 2018. (AR 38 citing 951-54; 981, 983, 991, 993). The ALJ further noted that on December 7, 2018, Dr. Anderson opined that Plaintiff could return to work on December 7, 2018, but with a limitation of no lifting greater than 40 pounds. (AR 1140). Dr. Anderson further opined that Plaintiff should not work from January 25, 2019, to April 2, 2019. (AR 38 AR 1155, 1162).

Also relevant here, the ALJ acknowledged that Dr. Peyman submitted multiple medical

---

[2] Dr. Sarrafian Peyman is referred to as Dr. Peyman by the ALJ and Plaintiff, but the Commissioner contends that he should be referred as "Dr. Sarrafian." (Doc. 20). The Court shall refer to Sarrafian Peyman as "Dr. Peyman" for the sake of consistency with the ALJ's ruling.

opinions. (AR 38). The ALJ noted that on May 22, 2017, Dr. Peyman opined that Plaintiff could return to work, but with restrictions to limited lifting, pushing, and pulling up to five pounds; no overhead work; limited use of hands as tolerated; a 10-minute stretch break every 50 minutes; no work near moving machinery; and frequently change positions, as tolerated. *Id.* (citing AR 930, 934).

Dr. Peyman issued other opinions providing that Plaintiff could return to work on June 1, 2017, June 27, 2017, August 25, 2017, November 15, 2017, December 13, 2017, and March 1, 2018, with the following restrictions: "no work near moving machinery and frequent change of position as tolerated. Limited use of hand to as tolerated hours per day. No overhead work. Limited lift. Limited push and pull up to five pounds. Must take a stretch break for 10 minutes after every 50 minutes." (AR 38 citing AR 955, 957, 959, 960, 963, 965, 971).

On June 7, 2018, Dr. Peyman opined that Plaintiff should be off work until July 5, 2018. (AR 1020). On November 8 and November 29, 2018, Dr. Peyman opined that Plaintiff could return to work with the restrictions set forth by Dr. Anderson. (AR 1018, 1123). However, the ALJ further notes that on November 30, 2018, Dr. Peyman opined Plaintiff should not work until December 28, 2018, (AR 1124) and that on January 11, 2019, Dr. Peyman opined that Plaintiff could return to work on that same day under the restrictions set by Dr. Anderson. (AR 1145).

After summarizing the opinions rendered by each of Plaintiff's treating providers, the ALJ summarily assigned little weight to *all* the treating providers with the following paragraph:

> The undersigned gives the worker's compensation opinions little weight because they are overly restrictive and are not supported by the objective testing results, treatment history, and the claimant's statements, such as report of caring for her father as well as doing house and yard work as discussed above. Despite the findings noted in the worker's compensation examinations, the undersigned notes that the physical examinations conducted by other providers revealed findings, including normal unrestricted range of motion of the cervical spine with no stiffness or tenderness, negative provocative testing, full range of motion of the left shoulder with intact gross sensation, ability to tie her shoes, pick up a penny, and button up her shirt no shortness of breath and unlabored breath sounds, full motor strength, and normal gait.

(AR 38-39 citing AR 671-732, 739-755, 762-781, 782-828, 853-937, 976-1029, 1074-75, 1116-1162, 1163-64).

4

At step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (AR 40). Relying largely on the testimony of a vocational expert (VE), the ALJ found Plaintiff could work as a small products assembler, inspector/hand packager, and marker. The ALJ ultimately found Plaintiff not disabled. (AR 41). Plaintiff requested review of the ALJ's decision, and the Appeals Council upheld the ALJ on May 26, 2020. (AR 4). Thereafter, Plaintiff initiated this action on March 12, 2021. (Doc. 1).

## II.     Standard of Law

### A.     The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)).

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

Before making the step four determinations, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite her limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). *E.g.*, *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'") (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.")

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.      Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.     Discussion

Plaintiff presents two legal issues for the Court's review. First, Plaintiff argues the ALJ committed harmful error by failing to defer to the medical source statements and RFC limitations provided by Drs. Peyman and Anderson, and instead afforded them "little weight" without providing "specific and legitimate" reasons for her finding. Plaintiff also asserts the ALJ's RFC finding is not supported by substantial evidence. (Doc. 18 p. 1).

**A.     Whether the ALJ Rejected Drs. Peyman and Anderson's Opinions Without Providing "Specific and Legitimate" Reasons**

For Social Security disability cases filed before March 27, 2017, the weight to be given to medical opinions depends in part on whether the opinions are proffered by treating, examining, or

7

nonexamining health professionals.[4] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant…" as a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Lester*, 81 F.3d at 830; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. The opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *Id*. The "specific and legitimate reasons" standard requires the ALJ to set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his/her interpretation of the evidence, and make a finding. *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Absent specific and legitimate reasons, the ALJ must defer to the opinion of a treating or examining physician. *See Lester*, 81 F.3d at 830-31.

Plaintiff argues the ALJ committed harmful error when she assigned "little weight" to the RFC assessments of Drs. Anderson and Peyman, who are Plaintiff's treating physicians. (Doc. 18 pp. 20-21). Plaintiff asserts Drs. Anderson and Peyman consistently found that Plaintiff's disability level required modifications comprised of avoiding work near moving machinery and frequent changes of position as tolerated; limited use of hands to as tolerated; no overhead work; limited lift, push and pull to up to five pounds; and that Plaintiff take a stretch break for 10 minutes after every 50 minutes. (AR 955, 957, 959, 960, 963, 965, 967, 969, 971, 1004). In contrast, the ALJ assigned "good weight" to the opinions of Drs. P. Frye, MD, and L. Bobba MD

---

[4] Effective March 27, 2017, Revisions to Rules Regarding the Evaluation of Medical Evidence went into effect. *Melynda G v. Kijakazi*, No. 5:20-cv-00890-JC, 2022 WL 911585, at *4 n.7 (C.D. Cal. Mar. 29, 2022). Because Plaintiff's application was filed prior to March 27, 2017, 20 C.F.R. § 404.1527 applies, not 20 C.F.R. § 404.1520c.

8

1  who are nontreating State agency medical consultants. (AR 37).  The ALJ also provided non-

2  treating consultative physician Dr. Shahrzad Sodagar-Marvasti "some weight" and "good

3  weight," even though the ALJ also acknowledged that Dr. Sodagar-Marvasti's opinion "was not

4  based upon a review of the record as a whole and was provided prior to the claimant undergoing

5  left shoulder surgery." *Id*.

6        An ALJ may reject the opinions of a physician when they are inconsistent with the overall

7  record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see* 20

8  C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole,

9  the more weight we will give to that opinion.").  However, to do so, "[t]he ALJ must do more

10 than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).  The ALJ

11 must set out in the record his reasoning and the evidentiary support for his interpretation of the

12 medical evidence. *Tackett*, 180 F.3d at 1102; *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.

13 1986).

14       Plaintiff argues that the ALJ committed harmful error when she failed to afford Drs.

15 Peyman and Anderson the greatest weight under the treating physician rule, and further failed to

16 provide specific and legitimate reasons for assigning them less weight.  Plaintiff contends that the

17 ALJ summarily lumped the opinions of all of Plaintiffs treating providers together and accorded

18 them "little weight" using vague and general language, to wit:

19-25
> The undersigned gives the worker's compensation opinions little weight because they are overly restrictive and are not supported by the objective testing results, treatment history, and the claimant's statements, such as report of caring for her father as well as doing house and yard work as discussed above. Despite the findings noted in the worker's compensation examinations, the undersigned notes that the physical examinations conducted by other providers revealed findings, including normal unrestricted range of motion of the cervical spine with no stiffness or tenderness, negative provocative testing, full range of motion of the left shoulder with intact gross sensation, ability to tie her shoes, pick up a penny, and button up her shirt no shortness of breath and unlabored breath sounds, full motor strength, and normal gait.

26 (AR 38-39 citing AR 671-732, 739-755, 762-781, 782-828, 853-937, 976-1029, 1074-75, 1116-

27 1162, 1163-64).

28       The Commissioner argues that the ALJ did provide specific and legitimate reasons for

9

1  rejecting the opinions of Drs. Peyman and Anderson.  The Commissioner notes, for instance, that
2  the ALJ noted the disparity between the opinions of Drs. Anderson and Peyman concerning
3  Plaintiff's significant functional limitations (*see, e.g.,* AR 951, 1162, 1004) and the fact that
4  "Plaintiff reported that she engaged in several strenuous activities."  (Doc. 20 at 5, citing AR 35-
5  36, 38).  The Commissioner further points to portions of the record reflecting Plaintiff self-
6  reported that she was "independent in most [activities of daily living]" which included cooking,
7  cleaning, and grocery shopping. (AR 36, 665, 883).  The ALJ also acknowledged that Plaintiff
8  further reported "splitting a lot of firewood" (AR 36, 730, 731) and that she lifted and carried a
9  calf from the ground. (AR 25, 891).

10  During the hearing before the ALJ, Plaintiff testified her daily routine consisted of feeding
11  animals, doing household chores like vacuuming and washing dishes, yard work, and cooking.
12  (AR 36, 141).  Plaintiff also testified that she cares for her father who is "permanently disabled"
13  and cannot be left alone due to his mental issues.  (AR 36, 141).  The Commissioner argues that
14  the ALJ reasonably relied on Plaintiff's activities in discounting the opinions rendered by Drs.
15  Anderson and Peyman. (Doc. 20 p. 5). The Commissioner also argues the ALJ properly credited
16  the opinions of Drs. Frye, Bobba, and Sodagar-Marvasti over the opinions of Drs. Anderson and
17  Peyman as being more consistent with the record. (Doc. 20 pp. 7-8, citing AR 34-35).  In short,
18  the Commissioner argues that the ALJ's opinion was "sufficiently specific to allow a reviewing
19  court to conclude the [ALJ] did not 'arbitrarily discredit a claimant's testimony …'" *Id.* p. 6
20  (citing *Bunnell v. Sullivan*, 947 F.3d 341, 345 (9th Cir. 1991) (en banc)).

21  While the treatment record here may support the ALJ's RFC determination, the ALJ
22  neither expressly identified the specific opinions of Drs. Peyman and Anderson she concluded
23  were undermined nor linked those opinions to specific objective medical testing results, treatment
24  history, and Plaintiff's statements regarding her activities of daily living.  Likewise, while the
25  ALJ alluded generally to the fact of "normal findings" of medical examinations as casting doubt
26  on some of Drs. Peyman and Anderson's opinions, the ALJ did not expressly identify these
27  physical examinations or attending physicians.  *See Hernandez v. Comm'r of Soc. Sec.*, No. 1:20-
28  cv-00527-SAB, 2022 WL 718427, at *9 (E.D. Cal. Mar. 10, 2022) (finding that ALJ's failure to

1  distinguish the opinions of two consultative examiners combined with the ALJ's lack of
2  description of conservative treatment rendered the opinion impermissibly vague); *Jones v. Saul*,
3  No. 2:18-cv-1094-EFB, 2019 WL 4747702, at *4 (E.D. Cal. Sept. 30, 2019) (finding the ALJ
4  erred when he "merely offered his conclusion" that the physician's opinion was inconsistent with
5  other evidence and failed to either identify specific objective findings from his summary of the
6  record or provide "an explanation of how such evidence undermines [the physician's] opinion.")

7  In discounting the opinions tending to favor a finding that Plaintiff is disabled, the ALJ
8  also impermissibly lumped together accepted medical sources (Drs. Peyman and Anderson) with
9  non-physician/non-acceptable sources (PA Guy and NP Grewal) without making appropriate
10 distinctions across their findings and opinions.  *See Ford v. Comm'r of Soc. Sec. Admin.*, No. CV
11 20-00276-TUC-JCH (LAB), 2021 WL 6334968, at *6 (D. Ariz. Oct 25, 2021) ("The ALJ did not
12 specify which of [the treating physicians'] limitations are 'excessive' and how they 'contrast
13 sharply with the other medical evidence in the record.'"); *Angelica R. v. Saul*, No. CV 19-4191-E,
14 2019 WL 5618079, at *9 (C.D. Cal. Oct. 31, 2019) (finding the ALJ's reasoning to be
15 "insufficiently specific" when multiple opinions of workers compensation treating physicians
16 were "lumped together"); *Ward v. Berryhill*, No. C16-1677-MJP-BAT, 2017 WL 4842342, at *4
17 (W.D. Wash. Oct. 5, 2017) ("It is also unclear from the ALJ's characterization of the opinion in
18 the June 2015 decision as being from multiple providers if the ALJ considered the opinion as one
19 from a non-acceptable medical source or from an acceptable and non-acceptable medical source
20 together.").

21 The Court notes there is substantial overlap between the opinions of Dr. Peyman and Dr.
22 Anderson as reflected by Dr. Peyman's frequent incorporation of limitations "per Dr. Anderson."
23 *See, e.g.,* (AR 1012, 1132, 1141, 1145, 1149).  Even were the Court to find only minimal error in
24 the ALJ's lumping together of numerous medical and non-medical source opinions, the ALJ's
25 error also is manifest in his wholesale references generally to entire exhibits, which span
26 hundreds of pages.  *See. e.g.,* (AR 38-39 citing AR 671-732, 739-755, 762-781, 782-828, 853-
27 937, 976-1029, 1074-75, 1116-1162, 1163-64).  An ALJ unquestionably may reject a physicians'
28 opinion when the physician identifies restrictions that "appear to be inconsistent with the level of

1    activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001);

2    *Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding that ALJ provided specific

3    and legitimate reasons for rejecting a physician's opinion where the assessment was based on the

4    subjective complaints and limitations identified by the physician that conflicted with the

5    claimant's daily activities). Nevertheless, here, in rejecting attending physician opinions, the ALJ

6    was required to specifically identify the evidence that conflicted with Drs. Anderson and

7    Peyman's opinions. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where medical

8    testimony is conflicting … it is the ALJ's role to… resolve the conflict"); *Gray v. Comm'r of Soc.*

9    *Sec. Admin.*, 365 Fed. App'x 60, 62 (9th Cir. 2010) ("When medical records are at odds with each

10   other or in any way conflict, it is the ALJ's role to assess and resolve conflicting medical

11   evidence."). A clear statement of the ALJ's reasoning is essential because the Court may only

12   affirm the agency's decision to deny benefits on the grounds invoked by the agency. *Brown-*

13   *Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations and quotations omitted); *see*

14   *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may

15   not take a general finding … and comb the administrative record to find specific conflicts.");

16   *Kreischer v. Berryhill*, No. 3:18-cv-01034-W (RNB), 2019 WL 2177916, at *5 (S.D. Cal. May

17   20, 2019) (finding that "[I]t is not the Court's function to comb the record to find specific

18   conflicts" when the ALJ references to hundreds of pages of treatment records.), *R&R adopted*

19   2019 WL 2373646 (June 5, 2019).

20         In arguing that the ALJ properly discounted and supported his assessment of Drs. Dr.

21   Peyman and Anderson's opinions, the Commissioner cites to the ALJ's summary of the treatment

22   records and Plaintiff's testimony reflecting her activities of daily living. (Doc. 20 p. 5) (citing AR

23   36). The Commissioner argues that Plaintiff's activities of daily living as documented by the ALJ

24   are sufficiently specific to support the ALJ's broad proposition that Drs. Peyman and Anderson's

25   functional limitations are excessive.

26         The Commissioner's citations to the ALJ's summary of medical record amount to an

27   impermissible *post hoc* rationalization of the ALJ's rejection of Drs. Peyman and Anderson.

28   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). To properly reject

Drs. Peyman and Anderson's opinion, the ALJ was required to provide a higher level of specificity than her citations to whole exhibits that in many instances consist of hundreds of pages from the record. *See Warecki v. Comm'r of Soc. Sec.*, No. 1:20-cv-01519-BAK (SAB), 2022 WL 2901606, at *12 (E.D. Cal. July 22, 2022) (finding harmful error where ALJ discounted treating physician's opinion by citing to several exhibits from the record "in their entirety" without identifying any specific examination within the hundreds of record pages generally cited).

In short, the ALJ's summary of the medical record is insufficient as she was required to link her findings to identified portions of that record to adequately rebut an attending physician's assessment of specific functional limitations. *Martinez v. Kijakazi*, No. 1:21-cv-0160-JLT-HBK, 2023 WL 5348335, at *3 (E.D. Cal. Aug. 21, 2023) ("Although the ALJ thoroughly summarized the medical record . . . the ALJ did not link this summary of the medical record to the rejected limitations."); *Lail v. Kijakazi*, No. 1:20-cv-1349 JLT, 2021 WL 4741431, at *5 (E.D. Cal. Oct. 12, 2021) (finding ALJ's rejection of witness's opinions and proffered limitations not properly supported due to ALJ's failure to specify which of the witness' opinions and limitations were rejected and failure to explain how the record was inconsistent with her opinions); *Young v. Saul*, No. 19-cv-01965-PJH, 2020 WL 3506805, at *25 (N.D. Cal. June 29, 2020) (finding the ALJ erred in rejecting a statement where "the ALJ did not identify any particular testimony that he discounted" and "did not cite which treatment records were inconsistent with specific portions of [the lay witness'] testimony."); *Solomon v. Comm'r of Soc. Sec.*, No. 1:17-cv-01763-SAB, 2018 WL 6419672, at *10 (E.D. Cal. Dec. 6, 2018) (finding error when ALJ stated that lay witness made overstatements but did not identify what the overstatements were on the record and which portions of the record contradicted that testimony.).

**B.     Whether In Light of the ALJ's Error, Remand for Further Proceedings is the Appropriate Remedy**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional

investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1998).

Here, the ALJ did not provide specific and legitimate reasons to reject the opinions provided by Drs. Peyman and Anderson. However, because these issues may be before determining the existence of disability, the Court finds that remand is warranted.

**IV.    Conclusion and Order**

For the reasons set for above, the Court finds the ALJ erred in evaluating opinions in the record and failed to apply the proper legal standards. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment (Doc. 18) is **GRANTED**.
2. This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and
3. The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Nicole Denece Brownlee and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **August 20, 2024**                              _____
                                                                                    UNITED STATES MAGISTRATE JUDGE